23CA1003 Peo v Mares 08-21-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 23CA1003
City and County of Denver District Court No. 19CR7304
Honorable Eric M. Johnson, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Anastacio Mares,

Defendant-Appellant.

---

JUDGMENT REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division VI
Opinion by JUDGE TOW
Yun and Sullivan, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced August 21, 2025

---

Philip J. Weiser, Attorney General, Frank R. Lawson, Senior Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Esteban A. Martinez, Alternate Defense Counsel, Longmont, Colorado, for Defendant-Appellant

¶ 1    Defendant, Anastacio Mares, appeals the judgment of conviction entered on a jury verdict finding him guilty of sexual assault on a child and sexual assault on a child by one in a position of trust. We reverse and remand with instructions to dismiss the charges.

## I.    Background

¶ 2    On April 25, 2022, Mares entered a plea of not guilty, which started the six-month speedy trial period under section 18-1-405(1), C.R.S. 2024. Instead of scheduling a trial date at the arraignment, however, the parties set a dispositional hearing to occur seven weeks later, on June 13, 2022. At that hearing, Mares requested that the dispositional hearing be reset to June 24, 2022, and agreed to toll the speedy trial deadline for eleven days.

¶ 3    On June 24, 2022, defense counsel raised the issue of Mares's competency, and the trial court ordered a competency evaluation, which further tolled the speedy trial deadline. § 18-1-405(6)(a). On August 1, 2022, the court received the competency evaluation opining that Mares was competent to proceed. Based on this report, the court found Mares competent on August 5, 2022. At that hearing, defense counsel requested another disposition date,

but Mares was unwilling to toll the speedy trial deadline to accommodate that request. As a result, the trial court said the parties would need to select a trial date before the expiration of the speedy trial deadline, which it calculated to be December 14, 2022.[1]

¶ 4  The trial court proposed to start the trial one month later, on September 6, 2022, but defense counsel rejected that date, stating that she would not have enough time to prepare for trial. The trial court then proposed September 20, 2022, but defense counsel

---

[1] The parties disagree as to the accuracy of the trial court's calculation of the speedy trial deadline. The competency evaluation tolled the speedy trial deadline an additional thirty-eight days. § 18-1-405(6)(a), C.R.S. 2024 (providing for the exclusion from the six-month speedy trial period "[a]ny period during which the defendant . . . is under observation or examination at any time after the issue of the defendant's . . . incompetency . . . is raised"); *cf. People v. Renfrow*, 564 P.2d 411, 413 (Colo. 1977) (in the context of a sanity evaluation, construing the phrase "any period during which the defendant . . . is under observation or examination" to mean until the filing of the psychiatric report). Thus, because the report was filed on August 1, 2022, the speedy trial deadline was tolled for a total of forty-nine days — the original agreed upon eleven days for the rescheduled dispositional hearing plus the thirty-eight days for the competency evaluation — ending December 13, 2022, not December 14. Because the trial was set well beyond either date, however, this minor miscalculation has no bearing on the outcome of the case.

rejected that date as well because she had another trial set for that week.[2]

¶ 5    Defense counsel said the trial would likely take four days. The court and the prosecutor then discussed their availability. The prosecutor declined to double set the case for a week in November when defense counsel was available, and the court assumed that defense counsel was not going to double set cases for two weeks in October when she had another trial set.

¶ 6    Ultimately, the court said,

> We were trying to set this matter for trial and, frankly, the problem that we have is that since trials have been restarted after all of the Covid breaks, the number of trials that have been reset on the Court's docket has basically [defense counsel] and [the prosecutor] in trial every week, basically, between now and December 14th, which is the speedy trial date currently as calculated for Mr. Mares. — Many of these are very serious cases and . . . both defense counsel and the [prosecutor] are set on murders, attempted murders, sex assault cases, and I have not had to trigger [section] 18-1-405(6)(j)([I])[, C.R.S. 2021]. I have worked very hard to avoid that on these Covid

---

[2] It appears the prosecutor also believed that a September setting was too soon, saying that "it simply wouldn't be viable to have a sexual assault on a child case, especially a case where the defendant is a habitual criminal[,] be set for trial within September which, frankly, I don't think the Court can accommodate."

3

resettings, with the docket the way it is because of all of the reorganization that we had to do and the backlog created by the Covid-19 pandemic but, at this time, the Court is going to have to find that the backlog of jury trials that I have on my docket and, frankly, that both counsel have on their dockets, both the Office of the Public Defender and the District Attorney's Office have had a lot of turnover. There's a lot of new attorneys and the fact of the matter is that the Covid pandemic and other — the Covid pandemic has directly resulted in the Court being unable to find a date that works for either — for both counsel. In fact, the prosecution is already double set on at least three of the weeks between now and December 14th. Every criminal jurisdiction in Denver is facing the same issues and I have not previously granted a continuance for this reason under — well I'm not granting a continuance but we have not had to trigger [subsection] 6(j) previously and, as indicated, the — this is [a sexual assault on a child] case. This is very serious so I am going to, though [section] 18-1-405(6)(j)[I], which allows us to exceed three months if the defendant is in custody, I'm going to trigger that because of the Covid pandemic and we will set this. Up to three months is excluded.

¶ 7     The General Assembly enacted the provision the trial court referenced, section 18-1-405(6)(j), in response to the COVID-19 pandemic. Ch. 277, sec. 1, § 18-1-405, 2021 Colo. Sess. Laws 1600-02. This provision, which we refer to as the COVID-19 exclusion provision, allowed the court, on its own motion, to

continue a trial one time for up to three months (six months if the defendant was not in custody at the time) to account for the backlog created by the pandemic. *Id.* at 1600. However, the General Assembly explicitly provided that the COVID-19 exclusion provision, which went into effect on June 21, 2021, would only be available through April 29, 2022, and no continuance could be granted under that provision after that time. *Id.* at 1601.

¶ 8        Apparently overlooking the statutory language regarding the expiration of the COVID-19 exclusion provision, the trial court then proposed dates in January 2023, and the prosecutor agreed to them.[3] Though defense counsel acknowledged that she was available on January 17, 2023, she nevertheless objected to that date, stating that the trial was being set outside the speedy trial period, though she did not explicitly raise the expiration of the COVID-19 exclusion provision. The court set the trial for January 17, 2023.

---

[3] At the prosecutor's request, the trial court also made a finding that no other division of the district court was available to try the case during the first two weeks of November.

5

¶ 9    On January 13, 2023, defense counsel filed a motion to dismiss Mares's charges for violation of his statutory right to a speedy trial, raising for the first time the expiration of the COVID-19 exclusion provision. On January 17, 2023, the trial court denied the motion to dismiss. The court stated that it had already made a record that "I could not fit in the case of this nature of this length prior" to the speedy trial deadline, and "the Court did make its findings as to good cause to extend this date as the earliest date that I could get in a case of this length, of this nature, onto the Court's docket."

¶ 10    Defense counsel then argued that no subsection in the speedy trial statute other than the COVID 19 exclusion provision provided the trial court with a basis to extend the speedy trial deadline. The court responded, "Well, the Court's looking at it, frankly, as delays caused by the — that could be attributable to the defense" because the competency evaluation pulled the case out of the normal docket rotation, allowing other cases to fill up the docket "to the point where we could not fit this in before" the speedy trial deadline.

¶ 11    The prosecutor stated that it was her recollection "that the Court did offer dates but that we were unable to find a mutually

agreeable date based upon the defense's unavailability." The court responded, "Well, that happened as well." The prosecutor then asked the court to make findings pursuant to *People v. Chavez*, 650 P.2d 1310, 1310 (Colo. App. 1982), "that based upon the inconvenience of defense counsel its effectively tantamount to a continuance." The court declined to do so, stating that everything was already on the record, and that "I did everything I could to, not only the spirit, but the letter of speedy trial [sic], and this is the fastest we could get it in after the delay and after he was found competent."

¶ 12    A jury found Mares guilty of sexual assault on a child and sexual assault on a child by one in a position of trust. The trial court sentenced Mares to indeterminate prison terms of twenty-four-years to life for the sexual assault by one in a position of trust conviction and ten years to life for the sexual assault on a child conviction, to be served consecutively.

## II.    Statutory Speedy Trial Right

¶ 13    Mares contends that the trial court violated his statutory right to a speedy trial.[4]  We agree.

### A.    Applicable Law and Standard of Review

¶ 14    Subject to several exclusions and exceptions, a defendant must be brought to trial within six months from the date of the entry of a not guilty plea, or the charges must be dismissed. § 18-1-405(1); *People v. Nunez*, 2021 CO 31, ¶ 16 ("Section 18-1-405(1) requires dismissal with prejudice if a defendant's statutory speedy trial right is violated.").

¶ 15    As discussed above, one such provision for extending this six-month period was the COVID-19 exclusion provision, which excluded from the computation of the six months the "period of delay for any continuance due to the backlog of jury trials directly

---

[4] Mares's opening brief references his constitutional right to a speedy trial, but he makes no argument as to how this right was violated.  We therefore do not address his undeveloped constitutional claim.  *See People v. Cuellar*, 2023 COA 20, ¶ 44.

resulting from a restriction, procedure, or protocol implemented during" the COVID-19 pandemic.[5]

¶ 16    Section 18-1-405(6)(f) provides another way of extending the six-month speedy trial period.  This provision excludes "[t]he period of any delay caused at the instance of the defendant."  *People v. DeGreat*, 2020 CO 25, ¶ 14.  When determining whether this extension is applicable, "[t]he key . . . is to determine whether the defendant caused the delay.  If the delay is caused by, agreed to, or created at the instance of the defendant, it will be excluded from the speedy-trial calculation made by the court."  *People v. Bell*, 669 P.2d 1381, 1384 (Colo. 1983).  A defendant is deemed to have caused the delay when there is "express consent to the delay or other affirmative conduct" evincing a clear intent to waive the right to speedy trial.  *Id.* at 1385 (quoting *Harrington v. Dist. Ct.*, 559 P.2d 225, 228 (1977)).  We look to whether the defendant was the "moving force" behind the delay, *id.* at 1386, and whether his

---

[5] We note that the COVID-19 exclusion provision spoke in terms of "any continuance," while this case involves the *initial setting* of Mares's trial.  Nevertheless, because Mares does not contend that this provision was inapplicable to the initial setting of his trial date, we assume, without deciding, that the provision applied (or, more accurately, would have had it not expired).

actions "could be construed as 'tantamount to a request for a continuance,'" *id.* at 1384 (quoting *Chavez*, 650 P.2d at 1311).

¶ 17    To satisfy its burden to comply with the speedy trial statute, the trial court must make "a record sufficient for an appellate court to determine statutory compliance." *People v. Lucy*, 2020 CO 68, ¶ 21 (quoting *Marquez v. Dist. Ct.*, 613 P.2d 1302, 1303-04 (Colo. 1980)).

¶ 18    We review de novo whether a trial court violated a defendant's statutory speedy trial right. *Nunez*, ¶ 16. Because a trial court lacks jurisdiction to try a defendant in violation of his statutory speedy trial rights, *DeGreat*, ¶ 8, we must reverse the conviction if we conclude that Mares's statutory speedy trial rights were violated. *See* § 18-1-405(1) (mandating dismissal of charges and prohibiting re-charging the defendant if the defendant is not brought to trial within the speedy trial deadline); *People v. Novotny*, 2014 CO 18, ¶ 26 (recognizing section 18-1-405 as a legislative mandate that requires automatic reversal).

### B.    Mares's Speedy Trial Right Was Violated

¶ 19    As noted, Mares entered his not guilty plea on April 25, 2022. After accounting for the initial agreed upon tolling and the delay

resulting from Mares's competency evaluation, he had a statutory right to be brought to trial by mid-December. His trial, however, did not begin until approximately one month after that deadline. Thus, absent additional tolling or other extension of the deadline, his trial was untimely.

¶ 20 The People contend that two different statutory provisions support such additional time: the COVID-19 exclusion provision and the provision accounting for delays caused by the defendant. Neither provides the People with safe harbor.

### 1. The COVID-19 Exclusion Provision Did Not Apply

¶ 21 Mares contends that, because the COVID-19 exclusion provision had expired, the trial court erred by relying on it to extend the speedy trial deadline.

¶ 22 The People concede that at the time the trial court invoked it, the COVID-19 exclusion provision had expired. But the People nevertheless argue that Mares's conviction should not automatically be reversed with prejudice. Relying on "equitable principles" from United States Supreme Court case law, the People contend that Mares waived his right to claim that the COVID-19 exclusion provision had expired. Specifically, quoting *Harrow v. Department*

*of Defense*, 601 U.S. 480, 483-84 (2024), the People assert that, unless a statute clearly conveys a procedural deadline as jurisdictional, "a court will not enforce a procedural deadline against a non-complying party if his opponent has forfeited or waived an objection." They further rely on *Harrow*, as well as *McIntosh v. United States*, 601 U.S. 330, 344-45 (2024), to argue that "equitable principles preclude [the expiration of the COVID-19 exclusion provision] from being weaponized retroactively to justify vacatur."

¶ 23 We acknowledge that "statutory rights can be waived or forfeited." *Richardson v. People*, 2020 CO 46, ¶ 24. But the People's reliance on these federal cases is unavailing for several reasons.

¶ 24 Notably, neither *McIntosh* nor *Harrow* involved a speedy trial challenge. And the People do not cite any Colorado case invoking the equitable principles discussed in *McIntosh* or *Harrow* to excuse a speedy trial violation. Moreover, unlike the federal rules involved in those cases, the relevant Colorado statute, section 18-1-405, explicitly mandates reversal if the deadline is not met. Even under the People's own characterization of *Harrow*, the equitable

12

considerations articulated in that case do not apply where there is a clear statutory indication that the deadline is jurisdictional. *Hampton v. Dist. Ct.*, 605 P.2d 54, 56 (Colo. 1980); *Novotny*, ¶ 26.

¶ 25 In addition, the People's suggestion that Mares had some obligation to raise the speedy trial issue earlier is inconsistent with established precedent. "The burden of compliance with the speedy trial statute is on the district attorney and the trial court." *People v. Roberts*, 146 P.3d 589, 593 (Colo. 2006). "[I]n the speedy trial context, 'the only affirmative action required on the part of the defendant [is] that he move for a dismissal prior to trial.'" *DeGreat*, ¶ 16 (quoting *Harrington*, 559 P.2d at 228).

¶ 26 Nor do we agree with the People that Mares waived his right to invoke the expiration of the COVID-19 exclusion provision merely because he did not explicitly reference it when asserting his speedy trial right or at any point before expiration of the speedy trial deadline. Neither the trial court nor either of the parties noticed the expiration of the provision at the time the trial court invoked it.[6] Nor is there any indication in the record that Mares knew about the

---

[6] The People acknowledge that the record suggests no one appeared aware at this time.

expiration of the provision before the speedy trial deadline passed.
Thus, it simply cannot be said that Mares knew about the
expiration and intentionally chose not to raise it. *See Forgette v.
People*, 2023 CO 4, ¶ 28 ("Waiver is 'the *intentional* relinquishment
of a *known* right or privilege.'" (quoting *People v. Rediger*, 2018 CO
32, ¶ 39)).

¶ 27    Similarly, we reject the People's alternative contention that
Mares forfeited any challenge to the error and, presumably, that the
error was not plain.[7]  As noted, a speedy trial violation is not
subject to any review for prejudice; the statute mandates reversal.
§ 18-1-405; *Novotny*, ¶ 26.  (This mandate also dispenses with the
People's apparent suggestion that any error could be harmless.)

¶ 28    The People attempt to draw a distinction between analyzing
whether the trial court erred by setting the trial beyond the speedy
trial deadline (which would not be subject to plain error review) and
whether the trial court erred by relying specifically on the expired
COVID-19 exclusion provision (which the People argue should be

---

[7] The People do not explicitly argue that any error was not plain.
However, forfeited appellate claims are analyzed for plain error.
*People v. Rediger*, 2018 CO 32, ¶ 40.

14

reviewed for plain error). The People offer no statute, rule, or case law — and we are aware of none — that recognizes such a distinction.

¶ 29 Nevertheless, even assuming that we can review the trial court's invocation of the COVID-19 exclusion provision for plain error, the error here was plain. First, the error was obvious because it "contravene[d] a clear statutory command." *People v. Crabtree*, 2024 CO 40M, ¶ 42. The General Assembly's words unequivocally state that the provision is not to be invoked after a specific date. Second, the error was substantial because it calls into doubt the reliability of the judgment of conviction. *See Hoggard v. People*, 2020 CO 54, ¶ 13 (an error is substantial if it "so undermine[s] the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction" (quoting *People v. Weinreich*, 119 P.3d 1073, 1078 (Colo. 2005)). Indeed, contrary to the People's contention, Mares's untimely trial *did* deviate from the intent of the speedy trial statute — which is that, if a defendant is not timely tried, the charges against him must be dismissed. We cannot see how the reliability of a

conviction flowing from a trial that was not supposed to take place at all could possibly be free from doubt.

### 2. The Delay Cannot Be Attributed to Mares

¶ 30 The People also contend that the delay in setting the trial was attributable to Mares. Thus, the People argue that the period of delay between August 5 and the trial date in January should be attributed to Mares and excluded from the speedy trial period under section 18-1-405(6)(f). Again, we disagree.

¶ 31 As an initial matter, we note that the trial court did not make any findings attributing any of the delay to Mares or his counsel before the speedy period had expired. Instead, the issue of whether Mares caused the delay did not surface until the hearing on the motion to dismiss, after Mares notified the court and the prosecutor that the COVID-19 exclusion provision was not available. At that point, as noted above, the trial court suggested for the first time that, because the defense raised the competency issue, which removed the case from "the normal rotation," it was considering the delay attributable to Mares. At the prosecutor's prompting, the court also found that the parties were unable to find a mutually agreeable date based on defense counsel's unavailability.

¶ 32    It is unclear whether a trial court can revive an expired speedy

trial deadline by such post hoc rationalizations.  *See Nunez*, ¶ 23

(holding that the trial court could not retroactively declare a mistrial

after the speedy trial deadline had passed to revive the speedy trial

period); *cf. Nagi v. People*, 2017 CO 12, ¶ 18 (Márquez, J.,

dissenting) (expressing concern about engaging in post hoc

conjuring of support for an event that would toll the speedy trial

deadline).  Nevertheless, because the People presented the

argument to the trial court at the hearing on the motion to dismiss,

and the trial court made findings on the issue, we will address it.

¶ 33    In doing so, we conclude that the trial court improperly treated

the delay in resetting the trial after receiving Mares's competency

evaluation as being attributable to the defense merely because

defense counsel raised the competency question.  And the record

does not support its findings related to defense counsel's

unavailability.

¶ 34    As noted, and as the People concede, the period during which

Mares's competency was being evaluated does not trigger section

18-1-405(6)(f), as that delay is specifically covered by section

18-1-405(6)(a).  But there is no statutory basis to expand that

excluded period beyond the date the evaluation is received under the guise of "delay caused at the instance of the defendant" merely because docket congestion makes rescheduling the trial difficult. Further, such a reading of the statute would suggest that post-evaluation delay in getting the case back on the calendar would be attributable to the defendant *only* if the defendant raised the issue of competency but not if the People or the court did so. Again, we see no support in the statute, either textual or contextual, for such a distinction. Indeed, this reading of the statute would place a defense attorney whose client presents competency concerns in an untenable position: insist on the possibly incompetent client's speedy trial or raise competency and risk being held responsible for extensions beyond the time it takes to have the client evaluated. We can discern no indication that the General Assembly intended to place defense counsel on the horns of such a dilemma. And we are aware of no case law that suggests otherwise.

¶ 35    We also conclude that the record does not support the People's contention that defense counsel's schedule necessitated setting the case beyond the speedy trial deadline. True, a defense counsel's

18

unavailability throughout the remaining speedy trial period can be attributable to the defendant and excluded from the calculation of the speedy trial deadline. *See Hills v. Westminster Mun. Ct.*, 245 P.3d 947, 952 (Colo. 2011) ("Because the court's effort to reschedule within the speedy trial deadline was rejected by defense counsel due to a scheduling conflict, and that rejection ultimately pushed the trial past the speedy trial deadline, we hold that the resulting delay was attributable to the defendant."). However, the trial court explicitly declined to make such a finding here.

¶ 36    Instead, the trial court simply agreed that dates had been offered but the parties were unable to find a mutually available date. While this is generally accurate, it is not, as the People contend, due to "defense counsel's inability to accept a trial date within the remaining time frame." In fact, the record suggests the opposite: defense counsel was available the week of November 15, but the *prosecutor* had a trial that week. Beyond rejecting two proposed trial dates in September (which the prosecutor later agreed would have been unworkable), defense counsel is not *on record* rejecting any other dates. Instead, it appears that the trial court assumed, based on reviewing its own division's trial calendar,

19

that defense counsel would not double set the case on her own schedule.

¶ 37 We acknowledge that defense counsel was present when the trial court was making statements about counsel's unavailability and did not interject to correct the court. Nevertheless, we reiterate that defense counsel has no burden to ensure that a trial gets scheduled before the speedy trial deadline. *DeGreat*, ¶ 16. Based on this record, it simply cannot be said that *defense counsel* made it clear that she would not be available throughout the remaining speedy trial period. As a result, it cannot be said that the delay between August 5, when the trial setting was discussed, and January 17 was at the instance of the defendant.

## C. Remand

¶ 38 Finally, the People contend that a remand for further factual findings, instead of reversal, is the proper remedy to "resolve any ambiguity" as to whether the facts supported their argument under section 18-1-405(6)(f). We disagree.

¶ 39 When "[t]he trial court's findings are insufficient to allow us to determine whether dismissal of the case was warranted on speedy

trial grounds," a remand may be appropriate. *People v. Desantiago*, 2014 COA 66M, ¶ 22.

¶ 40 The trial court's factual findings here do not hinder our appellate review, and the court's record is sufficient for us to determine the basis of its ruling, as we have done. *See Lucy*, ¶ 21. Thus, a remand is unnecessary. The remedy for violating Mares's statutory speedy trial rights is reversal with prejudice. *See* § 18-1-405(1); *Nunez*, ¶ 23; *Novotny*, ¶ 26.

### III.    Disposition

¶ 41 The judgment is reversed, and the case is remanded for dismissal of the charges with prejudice.

JUDGE YUN and JUDGE SULLIVAN concur.