The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
April 2, 2026

**2026COA22**

**No. 23CA1067, *People v. Stauch* — Criminal Law — Structural Error — Waiver — Invited Error; Juries — Juror Bias — Challenges for Cause — Peremptory Challenges**

A division of the court of appeals considers whether an erroneously denied challenge for cause is waived or invited by virtue of the fact that the defendant does not use a peremptory challenge to remove a biased juror to correct the trial court's error. The majority finds neither waiver nor invited error in this context and, applying *People v. Abu-Nantambu-El*, 2019 CO 106, concludes the error warrants reversal for structural error because a biased juror deliberated.

The dissent concludes that the defendant waived the right to claim error on appeal by exhausting all of her peremptory challenges without excusing the biased juror.

COLORADO COURT OF APPEALS                                    **2026COA22**

Court of Appeals No. 23CA1067
El Paso County District Court No. 20CR1358
Honorable Gregory R. Werner, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Letecia Stauch,

Defendant-Appellant.

JUDGMENT REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division VII
Opinion by JUDGE PAWAR
Gomez, J., concurs
Bernard*, J., concurs in part and dissents in part

Announced April 2, 2026

Philip J. Weiser, Attorney General, Katharine Gillespie, Senior Assistant
Attorney General, Denver, Colorado, for Plaintiff-Appellee

Eric A. Samler, Alternate Defense Counsel, Hollis A. Whitson, Alternate
Defense Counsel, Denver, Colorado, for Defendant-Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art.
VI, § 5(3), and § 24-51-1105, C.R.S. 2025.

¶ 1    Defendant, Letecia Stauch, appeals the judgment of conviction entered after a jury found her guilty of first degree murder (after deliberation), first degree murder (of a child under twelve by one in a position of trust), tampering with a deceased body, tampering with physical evidence, and multiple crime of violence sentence enhancers. Because we conclude that the trial court committed structural error by denying Stauch's challenge for cause to a biased juror, who deliberated, we reverse the convictions and remand for a new trial.

## I.    Background

¶ 2    The prosecution presented evidence at trial that Stauch brutally murdered her eleven-year-old stepson, G.S., in Colorado; put his body in a suitcase; and left it underneath a bridge in Florida. Stauch had pled not guilty by reason of insanity, arguing that she suffered from dissociative identity disorder, but the jury rejected that defense and found her guilty as charged. The trial court sentenced Stauch to life imprisonment without the possibility of parole, plus two consecutive sentences for the two tampering convictions.

¶ 3    On appeal, Stauch claims the court committed structural error when it denied her challenge for cause to a biased prospective juror who then deliberated.  She also asserts the court erred by denying her request to suppress evidence obtained pursuant to an overbroad warrant, and by admitting certain testimony by her ex-husband (G.S.'s father).  We agree that the court committed structural error when it denied Stauch's challenge for cause and a biased juror deliberated.  As a result, her convictions must be reversed.  Because it is likely to arise on remand, we also consider and reject Stauch's Fourth Amendment challenge to the search warrant.  However, we do not reach the remaining evidentiary issue.

## II.    Challenge for Cause

### A.    Applicable Law

¶ 4    Section 16–10–103(1) provides that a trial court

> shall sustain a challenge for cause on one or more of the following grounds:
>
> . . . .
>
> (b) Relationship within the third degree, by blood, adoption, or marriage, to a defendant or to any attorney of record or attorney engaged in the trial of the case;
>
> . . . .

(j) The existence of a state of mind in the juror evincing enmity or bias toward the defendant or the state . . . , [unless] the court is satisfied, from the examination of the juror or from other evidence, that he will render an impartial verdict according to the law and the evidence submitted to the jury at the trial.

¶ 5    Jurors who fall within one of these categories are considered biased as a matter of law — impliedly biased under subsection (1)(b) and actually biased under subsection (1)(j) unless they can be rehabilitated.  Upon a challenge for cause, the trial court is required to excuse them because, except as described in subsection (1)(j), they cannot be rehabilitated.  *People v. Abu-Nantambu-El*, 2019 CO 106, ¶ 33.

¶ 6    In *People v. Macrander*, the supreme court held that when an elected district attorney is the attorney of record, section 16-10-103(1)(b) includes prospective jurors who are related not only to the elected district attorney but also to any deputy district attorney in that office at the time jury selection occurs.  828 P.2d 234, 241 (Colo. 1992), *overruled on other grounds by*, *People v. Novotny*, 2014 CO 18.  That is, the statute directs automatic removal of a juror related within the third degree to any deputy district attorney in the elected district attorney of record's office, regardless of whether the

3

deputy district attorney appeared or participated in the case. *See id.* at 242 (This preserves "the appearance if not the reality of fairness in a criminal prosecution and . . . public trust and confidence in the criminal justice system.").

¶ 7 When a trial court erroneously denies a challenge for cause and a biased juror serves on the jury, the error is structural and requires reversal. *Abu-Nantambu-El,* ¶¶ 23, 36.

## B. Additional Facts

¶ 8 As part of voir dire, the prospective jurors completed a questionnaire that included a question about whether they had friends or relatives in law enforcement. Prospective Juror M.B. indicated that his son-in-law worked with the El Paso County District Attorney. During follow-up questioning, Juror M.B. confirmed that his son-in-law worked as a deputy district attorney in the same office as, and for, Michael Allen, the elected district attorney in El Paso County and the prosecuting attorney in this case.

¶ 9 Defense counsel later identified Juror M.B. among the prospective jurors he wished to challenge for cause. When the court asked for more detail, defense counsel explained, "His son-in-

law works for Mr. Allen." The prosecutor and court then made the following comments:

> Prosecutor: I hate to agree with [defense counsel], but the follow-up questions were never asked, how that's gonna impact his ability to be a fair and impartial juror. And that certainly doesn't rise to a level of statutory cause. So we would object to him being released for cause.

> Court: Yeah, I'm gonna circle back to that one, too. Probably what I'm . . . gonna do is not excuse Juror [M.B.] at this point in time, and think about it over the weekend and see where we are. I tend to agree that I don't think it's a statutory cause, and I didn't hear anything else about that fact creating an issue or conflict or something else . . . . I don't run across those sets of facts very often, so I just need to think about that one, and it may be that I decide [it] next week.

¶ 10 The prosecutor suggested that the court ask further questions of Juror M.B., and the court agreed. Defense counsel objected:

> I think the record is what it is, and I guess the only thing, I think that there is, you know, a difference between somebody saying, I have a son or daughter who works for the police, then [sic], I have a son-in-law who works for the D.A. who is actually trying the case. And so I think that's where it becomes different. Even if it was a different District Attorney, other than his son-in-law's direct boss, who is trying the case, I think it would be different, and I'll leave it on that.

5

¶ 11     The trial court brought the prospective jurors back into the room and asked Juror M.B. how long his son-in-law had worked for the district attorney, whether Juror M.B. had discussed the case with his son-in-law, and whether Juror M.B. might be influenced by a desire to have the case work out better for his son-in-law. Based on his answers, the court instructed Juror M.B. to return the next day. He was not ultimately dismissed.

## C.     Discussion

¶ 12     The Attorney General does not dispute that Juror M.B. fell within the category described by section 16-10-103(1)(b). Because he was related within the third degree to his son-in-law, who was a deputy district attorney in the prosecuting district attorney's office, we are bound by the supreme court's determination that his bias was implied by law. *See Macrander*, 828 P.2d at 238-39.

¶ 13     Nevertheless, the Attorney General argues that reversal is not warranted because it is not clear from the record whether Juror M.B. deliberated. The Attorney General also asserts that defense counsel's challenge for cause was not properly preserved and that counsel either waived or invited the trial court's error. We are not persuaded by these arguments.

### 1. M.B. Deliberated

¶ 14     Our review of the record demonstrates that Juror M.B. deliberated.  Indeed, the trial court granted Stauch's motion to settle the record on this point, removing any doubt.[1]

### 2. The Challenge Is Properly Before Us

¶ 15     The Attorney General first argues that Stauch failed to properly preserve her challenge for cause because counsel did not explicitly cite section 16-10-103(1)(b) and did not correct the trial court's purported misunderstanding that the challenge for cause was based on something other than a statutory ground.  The Attorney General further asserts that defense counsel's comments after making the challenge for cause suggest that the challenge was based on Juror M.B.'s actual bias (subject to rehabilitation), not his implied bias based on his relationship to the prosecutor.  For the reasons discussed below, we conclude that the court considered

---

[1] While the Attorney General attempts to dismiss this portion of the record as "new material," the trial court's order settling the record was accepted as part of the supplemental record on appeal.  It is therefore properly before us.

and ruled on a statutory challenge for cause under section 16-10-103(1)(b).  Therefore, the challenge is properly before us.[2]

¶ 16    To begin, we recognize that defense counsel's challenge for cause potentially implicated two different subsections of section 16-10-103.  Recall that the statute requires the court to sustain a challenge for cause "on one or more" grounds — including implied bias based on a relationship to an attorney of record (subsection (1)(b)) and actual bias subject to rehabilitation (subsection (1)(j)).  That is, defense counsel could have based his challenge on Juror M.B.'s relationship to the prosecutor (subsection (1)(b)) or his state of mind resulting from that relationship (subsection (1)(j)).

¶ 17    Given this context, we reach two conclusions from the record.  First, we conclude that counsel's stated reason — "[h]is son-in-law works for Mr. Allen" — was sufficient to trigger a ruling under

---

[2] The Attorney General frames their argument in terms of preservation, which directs our standard of reversal.  But structural error generally requires automatic reversal without regard to whether the error was preserved.  *See People v. Miller*, 113 P.3d 743, 749 (Colo. 2005); *see also id.* at 752 (Bender, J., concurring).  Nonetheless, in order for us to review the erroneous denial of a challenge for cause, a challenge for cause must have been made.  *See People v. Abu-Nantambu-El*, 2019 CO 106, ¶ 37.

subsection (1)(b). Second, even if it were not clear solely from counsel's challenge to Juror M.B. on which part of the statute counsel was relying, we nevertheless conclude the prosecutor's and court's subsequent comments brought subsection (1)(b) squarely into play for purposes of our review. *See People v. Melendez*, 102 P.3d 315, 322 (Colo. 2004) (talismanic language is not required to preserve arguments for appeal, but the trial court must be presented with opportunity to rule on the issue).

¶ 18    As the prosecutor correctly observed, at the time of the challenge, neither attorney had asked any questions to elicit whether Juror M.B. had "a state of mind . . . evincing enmity or bias." Without these questions, there was no way to tell whether Juror M.B. should be excused for actual bias under section 16-10-103 (1)(j). Having recognized this, the prosecutor continued to note that the challenge "certainly d[id]n't rise to a level of statutory cause." In this context, we conclude the prosecutor could only have been referring to statutory cause based on implied bias under subsection (1)(b).

¶ 19    The trial court's subsequent comments likewise suggest its awareness of the distinct for-cause challenges available under

subsections (1)(b) and (1)(j). The court first said, "I don't think it's a statutory cause," and then noted that it "didn't hear anything else about that fact creating an issue or conflict or something else." These comments indicate a cursory (and improper) rejection of a challenge based on the relationship itself under subsection (1)(b), followed by a separate consideration and rejection of a challenge based on a biased state of mind under subsection (1)(j). Despite the Attorney General's arguments, we do not read these statements as demonstrating confusion about the nature of defense counsel's challenge. Instead, read in context, we conclude the trial court's statement, "I don't think it's a statutory cause," reflected the court's mistaken belief that Juror M.B.'s implied bias based on his relationship to the prosecutor (as distinct from his actual bias as a result of that relationship) did not trigger mandatory removal under section 16-10-103(1)(b). In other words, the trial court was not questioning whether defense counsel was making a statutory

challenge for cause based on the relationship itself.[3] Instead, and critically for purposes of our review, we read the trial court's statement as expressing its inclination to deny the challenge for cause on both grounds.

¶ 20    When the trial court ruled on the claim raised on appeal, it is properly before us. *People v. McFee*, 2016 COA 97, ¶ 31. Defense counsel's subsequent argument that the situation might be different if the juror's son-in-law worked for the police or for a different district attorney "other than his . . . direct boss, who is trying the case," does not change the result. As the Attorney General acknowledges, that argument went to whether Juror M.B. should be excused for actual bias under section 16-10-103(1)(j). And the trial court had already rejected the challenge under section 16-10-103(1)(b). As a result, defense counsel was under no further

---

[3] The record further supports this reading. In addition to Juror M.B., defense counsel identified Juror No. 8 among the jurors he wished to challenge for cause. He explained that Juror No. 8 had indicated on his questionnaire that he could not be fair in a case involving child abuse, was not sure he could set aside information he had heard about the case, believed a not guilty by reason of insanity plea was a ploy to excuse the alleged crime, and "was never asked about any of that." By contrast, when asked for his basis for challenging Juror M.B. for cause, defense counsel simply said, "Yeah. His son-in-law works for Mr. Allen."

obligation to restate his objection. *See People v. Coughlin*, 304 P.3d 575, 580 (Colo. App. 2011).

¶ 21    Likewise, that defense counsel did not cite section 16-10-103(1)(b) is of no moment. The Attorney General relies on *People v. Cevallos-Acosta*, 140 P.3d 116, 121 (Colo. App. 2005), in which a division of this court declined to consider the denial of a challenge for cause because defense counsel did not specifically cite section 16-10-103(1)(k). But in *Cevallos-Acosta*, "defense counsel moved 'to challenge the juror for cause, because he would place authority on the testimony of a police officer over anybody else,'" not based on the mere existence of a relationship covered by the statute. *Id.*

¶ 22    This case is distinguishable. Defense counsel's initial challenge for cause succinctly stated that Juror M.B. was related to the prosecutor. Unlike in *Cevallos-Acosta*, counsel did not argue that Juror M.B. might have actual bias in favor of the prosecution. And, as discussed, even if defense counsel's comments left any doubt, the prosecutor and trial court expressly acknowledged and dismissed the possibility of a statutory challenge based on the relationship itself. On these facts, we conclude the trial court was on notice of the particular ground for the challenge, even without a

specific reference to section 16-10-103(1)(b). *See People v. Komar*, 2015 COA 171M, ¶ 55 (an argument that goes to the subject matter of a statute, without citing the statute directly, sufficiently preserves the matter for appeal); *see also People v. Conyac*, 2014 COA 8M, ¶ 12 (challenge for cause was preserved, even though it was not expressly "for cause," because the context made clear it was a challenge for cause).

### 3. The Error was Neither Waived nor Invited

¶ 23 Waiver is the intentional relinquishment of a known right or privilege. *People v. Rediger*, 2018 CO 32, ¶ 39. We indulge every reasonable presumption against it. *Id.* Invited error, by contrast, prevents a party from complaining on appeal of an error that the party invited or injected into the case. *Id.* at ¶ 34. It "is a narrow doctrine and applies to errors in trial strategy but not to errors that result from oversight." *Id.*

¶ 24 The Attorney General asserts that defense counsel waived or invited the trial court's error by failing to clarify the basis of the challenge after the ruling suggesting that the court was confused about the grounds for the challenge. But we have already concluded that the trial court's comments did not indicate that it

misunderstood the nature of the challenge for cause — only that it did not believe excusal was warranted. Given this reading of the record, the foundation of the Attorney General's waiver–invited error argument collapses. In any event, even after Juror M.B. answered the trial court's follow-up questions, defense counsel said, "I maintain my objection to [Juror M.B.]" This ongoing objection suggests there was no waiver.

¶ 25 Nor can we conclude that defense counsel waived or invited the error by failing to use a peremptory challenge to excuse Juror M.B. The law does not require criminal defendants to use peremptory challenges to preserve an unsuccessful challenge for cause. To the contrary, the supreme court has held that its "prior decisions *do not require* a defendant to cure a trial judge's error on a challenge for cause by using a peremptory strike against the objectionable juror in order to preserve a claim that his right to a fair trial was violated by the presence of a biased juror." *Morrison v. People*, 19 P.3d 668, 670 (Colo. 2000) (emphasis added); *People v. Garcia*, 2018 COA 180, ¶¶ 10-11 ("Th[e] holding [in *Morrison*] indicates that there is no inherent inconsistency in allowing counsel

14

to challenge a juror for cause while also permitting her to use peremptory challenges to excuse other jurors.").

¶ 26     We recognize that the majority in *Abu-Nantambu-El*, ¶ 38 n.7, declined to consider whether waiver or invited error might apply in such a situation because it was not raised on appeal. Nevertheless, the majority suggested, albeit in dicta, that even if it were to entertain an invited error argument, it would find no invited error because the record did not suggest that defense counsel purposely failed to use a peremptory challenge to remove the impliedly biased juror. *Id.* Similarly, we see no suggestion of invited error here. And particularly in light of defense counsel's ongoing objection, we see no suggestion of waiver in the record.

¶ 27     The Attorney General relies on Justice Samour's dissent in *Abu-Nantambu-El*, expressing that defense counsel's decision not to use a peremptory challenge to excuse a juror after the loss of a for-cause challenge "is a classic example of waiver or invited error." *Id.* at ¶ 44 (Samour, J., dissenting). Like Justice Samour, the Attorney General suggests that counsel may simply request, and trial courts may be encouraged to grant, an additional peremptory challenge. But as in *Abu-Nantambu-El*, the record here lacks any indication

that defense counsel was acting strategically. *See Garcia*, ¶ 14 (finding no invited error under the same circumstances). Additionally, we are not persuaded that defense counsel should be required to use a peremptory challenge to excuse a biased juror after the court erroneously denies a for-cause challenge. *See Abu-Nantambu-El*, ¶ 38 ("Moreover, nothing prevents the prosecution from using a peremptory challenge to remove a juror who should have been excused for cause."). Nor are we persuaded that defense counsel may re-level the playing field simply by requesting an additional peremptory challenge.

¶ 28 Our supreme court has consistently recognized the type of error implicated here — a violation of the defendant's right to an unbiased jury — as so harmful that it warrants automatic reversal. *See People v. Flockhart*, 2013 CO 42, ¶ 17 (Structural errors "require automatic reversal without individualized analysis of how the error impairs the reliability of the judgment of conviction."). "The harm arising from a biased adjudicator 'pervades and infects the entire framework of the trial.'" *Abu-Nantambu-El*, ¶ 30 (citation omitted). And because maintaining the integrity of the judicial process is in the interest not only of the accused but of the public,

16

*see People v. Nozolino*, 2013 CO 19, ¶ 21, we are not inclined to infer waiver from defense counsel's failure to use a peremptory challenge to correct the trial court's error.[4]

### 4. Reversal is Required

¶ 29    When the trial court erroneously denies a for-cause challenge to a biased juror, the defendant exhausts her peremptory challenges, and the biased juror serves on the jury, the error is structural. *See Abu-Nantambu-El*, ¶¶ 36, 39 ("[T]he result of the [legislature's] determination" that "certain relationships render a potential juror impliedly biased" is "that the juror is deemed as a matter of law to be biased, period."). Such is the case here. Accordingly, Stauch's convictions must be reversed.

### III. Search Warrant

¶ 30    Stauch also challenges the court's denial of her motion to suppress evidence obtained from a search of her cell phone.

---

[4] Although Justice Samour's dissent suggests that encouraging judges to grant requests for additional peremptory challenges under Crim. P. 24(d)(3) would re-level the playing field, *see Abu-Nantambu-El*, ¶ 54, we are not so sure. After all, defense counsel would necessarily premise a request for additional peremptory challenges on the court's prior wrongly denied challenges for cause — rulings made by the same judge. And we are not confident that the same judge would grant additional peremptory strikes on this basis.

Because this issue is likely to impact the proceedings on remand, we elect to address it.

¶ 31    In denying Stauch's motion to suppress, the trial court acknowledged that the warrant to search Stauch's cell phone was broad but concluded that its breadth was necessary, given the scope of Stauch's conduct after G.S. went missing. Stauch argues the court erred because the warrant violated the Fourth Amendment's particularity requirement. We discern no error.

## A.    Applicable Law

¶ 32    The Fourth Amendment protects individuals against unreasonable searches and seizures. U.S. Const. amend. IV. A search conducted pursuant to a warrant is typically reasonable. *People v. Coke*, 2020 CO 28, ¶ 34. "However, so-called 'general warrants,' which permit 'a general, exploratory rummaging in a person's belongings,' are prohibited." *Id.* (quoting *Andresen v. Maryland*, 427 U.S. 463, 479 (1976)). To prevent a general exploratory search, a search warrant must be sufficiently particular as to enable the executing officer to reasonably ascertain and identify the things to be searched. *People v. Rodriguez-Ortiz*, 2025 COA 61, ¶ 22 (*cert. granted* Feb. 9, 2026). Because cell phones

contain so many different types of private data, warrants to search them must be carefully scrutinized. *See Coke*, ¶ 37. To be sufficiently particularized, warrants for the search of data on cell phones must include specific limitations based on (1) the type of alleged criminal activity; (2) the identity of the alleged victim; and (3) the timeframe, if applicable, within which the suspected crime occurred. *Rodriguez-Ortiz*, ¶ 27.

¶ 33    When evaluating whether a warrant is sufficiently particular, we must look at the totality of the circumstances, reviewing the warrant and any accompanying affidavits in a "practical, common sense fashion" to determine if probable cause exists. *Id.* at ¶¶ 21, 23 (quoting *People v. Roccaforte*, 919 P.2d 799, 804 (Colo. 1996)). Even if a warrant lacks particularity on its face, an affidavit submitted in support of the warrant may cure its lack of particularity if (1) the deficient warrant incorporates the curative affidavit by reference; (2) both documents are presented to the issuing judge or magistrate; and (3) the curative affidavit accompanies the warrant during the execution of the warrant. *Id.* at ¶ 24.

¶ 34    A trial court's suppression order presents a mixed question of fact and law.  *Id.* at ¶ 20.  We accept the court's findings of fact if they are supported by competent evidence, but we assess its legal conclusions de novo.  *Id.*

### B.    Additional Facts

¶ 35    The investigating detective sought a warrant to search Stauch's cell phone for the following:

> a. Data that may identify the owner or user of the device(s);
>
> b. Address books and calendars;
>
> c. Audio and video clips related to the above-described criminal activity and further described in this affidavit in support of the search warrant;
>
> d. Call histories, call logs and visual voicemail related to the above-described criminal activity and further described in this affidavit in support of the search warrant;
>
> e. Photographs and associated metadata related to the above-described criminal activity and further described in this affidavit in support of the search warrant;
>
> f. Text messages (SMS), multimedia messages (MMS), recorded messages and subscriber information modules [SIM cards] between the cell phone owner and co-conspirators involved in the above-described criminal

activity and further described in this affidavit in support of the search warrant, for the above-described Item(s);

g. E-mail messages and attachments, whether read or unread and related to the above-described criminal activity and further described in this affidavit in support of the search warrant, for the above-described item(s);

h. Internet World Wide Web (WWW) browser files including, but not limited to, browser history, browser cache, stored cookies; browser favorites, auto-complete form history and stored passwords;

i. Global position system (GPS) data including, but not limited to coordinates, way points and tracks;

j. Documents and other text-based files related to the above described criminal activity and further described in this affidavit in support of the search warrant, for the above described item(s);

k. Applications (Apps) and other installed programs, including widgets, and any data stored by the application or remotely stored by application server or database server;

l. Any and all computer software, to include but not limited to operating systems, applications, utilities, compilers, interpreters, communication programs, or any other digital information which can be interpreted by a computer or any related components, which may be stored in

21

electronic, magnetic, optical or other digital form;

m. Any and all data stored within any computer storage device or other processing and/or storage devices, to include, but not limited to, computer applications, images, videos, text, programs, encryption routines and algorithms, or any other data that may be decoded, reconstituted, or otherwise manipulated to produce, utilize, transmit, receive, encrypt, encode, or display such images, videos, text, programs, encryption routines, and algorithms.

With respect to these items, the warrant authorized police, with the aid of a law enforcement computer forensic laboratory, to "view, photograph, record, copy, forensically image and conduct forensic analysis of any and all metadata, programs and applications on the above-described device(s), as well as on any data storage devices and or mediums attached or installed in those device(s)."

¶ 36    The warrant incorporated an affidavit detailing G.S.'s disappearance and Stauch's conduct thereafter, including Stauch's refusal to cooperate with police, conflicting statements and behavior, ongoing communication with family members, and social media posts.  The affiant submitted that it was necessary to search Stauch's cell phone to ascertain her past location and

communications and to aid in locating G.S., who was still missing at the time.

## C.    Discussion

¶ 37    Stauch argues that the warrant to search her cell phone was overbroad because it allowed police to access anything that might be on her phone with no temporal limitations.  While she acknowledges that the affidavit was incorporated by reference into the warrant, she argues that it broadened the scope of the search even further by allowing a search for anything that could be used as evidence against her.  We disagree.

¶ 38    True, the warrant itself did not describe the type of alleged criminal activity, identity of the victim, or timeframe within which the crime occurred.  But it specifically incorporated the warrant application and supporting affidavit that did — the warrant limited the search to the items "specified in the application" and the application, in turn, attached the four-page supporting affidavit and "made [it] a part hereof."  The affidavit described how, on January 27, 2020, Stauch called to report G.S. missing, stating that he had left her house on foot and had not returned.  It continued to describe how, "[d]uring the subsequent 40-hour period," Stauch

refused to meet with police or provide requested information; was unaccounted for during part of the day G.S. was reported missing; called in sick to work for an unrelated reason; and had been continuously communicating with her daughter, husband, and other family members via text messages and Facebook. The affidavit also described that Stauch met with police two days after the report, when she substantially changed her statement regarding G.S.'s disappearance. Stauch initially suggested G.S. went to a friend's house and didn't return. But at the police station, she said that he was abducted by a carpet repair person who had sexually assaulted her at gunpoint. The affidavit went on to describe a roll of carpet with blood on it that was found in a storage area inside Stauch's house. It also stated that Stauch's cell phone was linked to her doorbell camera security system.

¶ 39    Based on its specific incorporation of the affidavit, which was signed by the issuing magistrate and accompanied the search warrant during its execution, we conclude that the warrant was sufficiently particular. *See Rodriguez-Ortiz*, ¶ 24. Stauch argues otherwise based on *Coke*, ¶ 38, in which the court found a warrant was insufficiently particular because it contained no limitation as to

24

the alleged victim or time period during which the crimes occurred. But as described above, the warrant and affidavit here specifically described Stauch's conduct during the forty-hour period after G.S. went missing. *See Rodriguez-Ortiz,* ¶ 30 (cell phone warrant was sufficiently particular because it incorporated affidavit describing period of investigation). While the warrant was broad, the affidavit was specific: it described conduct limited to those forty hours, clearly identified G.S. as the victim, and detailed inconsistencies in Stauch's conduct and story in the aftermath of his disappearance. *See id.* at ¶¶ 31-32 (the fact that a warrant was broad was not dispositive when it covered a six-month period, the affidavit identified the victims and specific crimes, and the defendant's "conduct and communications surrounding the crimes were relevant to identifying [him] as the suspect").

¶ 40 Moreover, many of the categories described in the warrant were expressly limited to items "related to the above described criminal activity and further described in this affidavit." While not every category included the same limiting language, "the warrant's incorporation of the attached affidavit served the same function."

25

*Id.* at ¶ 34 (warrant satisfied particularity requirement on this basis even if it "could have been more particular").

¶ 41    Because the warrant and affidavit, read together, limited the search of Stauch's cell phone to a specific timeframe, victim, and type of criminal activity, the warrant did not allow for a general search. Instead, it targeted a specific set of data that allowed police to establish Stauch as a suspect. *See Roccaforte*, 919 P.2d at 803-04 (a broad search warrant is nonetheless permissible when the requested evidence is justified by the nature of the crime or crimes). We therefore conclude that the Fourth Amendment's particularity requirement was satisfied, and Stauch's motion to suppress was properly denied.[5]

---

[5] Because we conclude that the warrant and affidavit were sufficiently particular, we do not address whether the good faith exception applied. *See People v. Rodriguez-Ortiz*, 2025 COA 61, ¶ 114 (*cert. granted* Feb. 9, 2026) (suppression based on an overbroad warrant is not required when officers act in objectively reasonable reliance on a warrant issued by a neutral magistrate). We also decline to address Stauch's remaining evidentiary contention because it is unclear whether or how that issue will arise on remand.

## IV. Disposition

¶ 42    The judgment is reversed, and the case is remanded with directions.

JUDGE GOMEZ concurs.

JUDGE BERNARD, concurring in part and dissenting in part.

¶ 43     Assume a court erroneously denies a defendant's challenge for cause to hypothetical Juror A. Then, assume the court also denies the defendant's challenges for cause to hypothetical Jurors B, C, D, E, F, G, and H. Next, assume the defendant has sixteen peremptory challenges: she uses seven of those peremptory challenges to remove Jurors B, C, D, E, F, G, and H from the jury and the other nine challenges to remove prospective jurors whom she did not challenge for cause. But she does not remove Juror A, who sits on the jury that ultimately convicts her. In this situation, does she waive her right to contend she is entitled to a new trial because of the court's error? I would answer this question "yes."

¶ 44     Because the majority answers this question "no," I respectfully dissent from the portion of Part II.C.3 of the majority's opinion concluding defendant, Letecia Stauch, did not waive the error the trial court made when it denied her challenge for cause to Juror M.B. I concur with the majority's determination in Part II.C.3 that the court erred when it denied that challenge and with the majority's analysis of the Fourth Amendment issue in Part III.C.

¶ 45    I also address the issue the majority does not discuss: Did the trial court err when it allowed the prosecution to present evidence concerning defendant's prior manipulative behavior to rebut her defense of not guilty by reason of insanity?  Because I do not believe the court erred, I would affirm defendant's convictions.

## I.    The Interplay of Challenges for Cause, Peremptory Challenges, and the Waiver Doctrine

### A.    Waiver

¶ 46    Structural errors, even those impinging on fundamental constitutional rights, can be waived.  *Stackhouse v. People*, 2015 CO 48, ¶ 8.  A defendant can waive her right to a public trial, *id.* at ¶ 17; her right to challenge a prospective juror who was the wife of the judge presiding over her case, *Richardson v. People*, 2020 CO 46, ¶ 30; and her right to object to a judge presiding over her case who had, while working as a public defender, previously represented her, *People v. Garcia*, 2024 CO 41M, ¶ 53.  And, by pleading guilty, she waives a number of constitutional rights, "including some that could lead to structural error if erroneously denied," such as the right to a trial by jury and to a public trial.  *People v. Jennings*, 2021 COA 112, ¶ 13.

29

¶ 47    Waiver is the intentional relinquishment of a known right. *Forgette v. People*, 2023 CO 4, ¶ 28.  Waivers may be explicit when, for example, "a party expressly abandons an existing right."  *Id.* Waivers may be also implied when the party "engages in conduct that manifests an intent to relinquish a right . . . or acts inconsistently with its assertion."  *Id.*  When deciding whether a waiver was implied, the record need only show that a defendant or her "counsel made a conscious decision to forego raising a claim [or an objection] for strategic or other reasons."  *Cardman v. People*, 2019 CO 73, ¶ 18 n.6.  We "do not presume acquiescence in the loss of fundamental constitutional rights, and [we] therefore indulge every reasonable presumption against waiver."  *People v. Curtis*, 681 P.2d 504, 514 (Colo. 1984).

B.    A Short History of Peremptory Challenges in Colorado

¶ 48    The United States Supreme Court has "long recognized" that "[peremptory] challenges are auxiliary; unlike the right to an impartial jury guaranteed by the Sixth Amendment, peremptory challenges are not of federal constitutional dimension."  *United States v. Martinez-Salazar*, 528 U.S. 304, 311 (2000); *see also Rivera v. Illinois*, 556 U.S. 148, 157 (2009)("If a defendant is tried

30

before a qualified jury composed of individuals not challengeable for cause, the loss of a peremptory challenge due to a state court's good-faith error is not a matter of federal constitutional concern.").

¶ 49    The way Colorado courts view peremptory challenges has changed significantly over the last quarter century.  Before 2014, our supreme court "requir[ed] the reversal of any criminal conviction in which the defendant [used] a peremptory challenge to remove a prospective juror, following an erroneous denial of h[er] challenge for cause, and ultimately exhaust[ed] all the peremptory challenges available to h[er]." *People v. Novotny*, 2014 CO 18, ¶ 14. In 2000, the supreme court expanded the scope of this automatic reversal rule to include "the erroneous *grant of prosecution challenges* [for cause], reasoning that such error g[ave] the prosecution an unfair tactical advantage." *Id.* at ¶ 15.

¶ 50    But, in *Novotny*, our supreme court abandoned the automatic reversal rule because "both federal and state law governing harmless error review in general, and the [lack of] constitutional significance of peremptory challenges in particular, have developed so as to substantially erode the premises upon which" the automatic reversal rule rested.  *Id.* at ¶ 17.  The court replaced the

automatic reversal rule with an outcome-determinative rule based on the harmless error standard of Crim. P. 52(a): An "error [will] be disregarded unless it affects substantial rights, [which] requires . . . evaluating the likelihood that the outcome of the proceedings in question were affected by the error." *Id.* at ¶ 20. Under the harmless error standard, if a juror biased against the defendant sits on the jury, such an error is structural because it violates a defendant's right to an impartial jury, and the appellate court must therefore reverse the defendant's conviction. *People v. Abu-Nantambu-El*, 2019 CO 106, ¶¶ 28-28.

¶ 51 The majority in *Novotny* did not address the scenario we face in this case: Does a defendant waive the error if she uses all her peremptory challenges, but she does not use one of them to remove a juror whom she challenged for cause, and the trial court erroneously denied that challenge? I will discuss that issue next.

### C. Peremptory Challenges and Waiver

¶ 52 Some might say that, at least under federal law, the issue in this case has already been decided by the United States Supreme Court. In *Martinez-Salazar*, the government urged the Supreme Court to read federal law "to require a defendant to use a

peremptory challenge to strike a juror who should have been removed for cause, in order to preserve the claim that the for-cause ruling impaired the defendant's right to a fair trial." 528 U.S. at 314. The Supreme Court rejected this invitation, reasoning there was no federal law "demand[ing] that a defendant use or refrain from using a peremptory challenge on a particular basis or when a particular set of facts is present." *Id.* (The Court recognized that there is one obvious exception to this statement: The Equal Protection Clause's prohibition of exercising "a peremptory challenge to remove a potential juror solely on the basis of the juror's gender, ethnic origin, or race." *Id.* at 315.).

¶ 53    This language, some would suggest, shows the United States Supreme Court rejected the application of the waiver doctrine to situations such as the one in this case. But I submit there are three reasons why *Martinez-Salazar* did not do so.

¶ 54    First, the language is dicta. *See Whiting v. State*, 969 N.E.2d 24, 32 n.9 (Ind. 2012); *State v. Rubio*, 195 P.3d 214, 216 (Ariz. Ct. App. 2008).

¶ 55    Second, in a concurring opinion, Justice Scalia pointed out the issue before the Supreme Court *was not* whether a defendant

*should be required* to use peremptory challenges curatively when a trial court has erroneously denied a challenge for cause. *Martinez-Salazar*, 528 U.S. at 318 (Scalia, J, concurring in the judgment). Rather, the issue *was* whether a defendant's *actual use* of a peremptory challenge to effect such a cure impinged upon his ability to exercise all his peremptory challenges under Fed. R. Crim. P. 24(b), and the majority had concluded the exercise of the defendant's peremptory challenges had not been adversely affected. *Id.*

¶ 56 Justice Scalia was "far from certain" that the Court's analysis of the use of peremptory challenges was "correct." *Id.* "It is easy enough to agree," he continued, "that we have no warrant to read" into Fed. R. Crim. P. 24(b) "a requirement that peremptories be used to remove veniremen properly challenged for cause." *Id.* "The difficult question, however, is not whether" Fed. R. Crim. P. 24(b) "requires exercise of the peremptory, but whether normal principles of waiver . . . disable a defendant from objecting on appeal to the seating of a juror he was entirely able to prevent." *Martinez-Salazar*, 528 U.S. at 318 (Scalia, J., concurring in the judgment). Then he added,

> I would not find it easy to overturn a
> conviction where, to take an extreme example,
> a defendant had plenty of peremptories left but
> chose instead to allow to be placed upon the
> jury a person to whom he had registered an
> objection for cause, and whose presence he
> believed would nullify any conviction.

*Id.* at 318-19.

¶ 57 Third, *Martinez-Salazar* concerned a rule of federal criminal procedure, not a rule of state criminal procedure. *See Browning v. State*, 2006 OK CR 8, ¶ 9 ("While *Martinez-Salazar* is the law in cases involving federal criminal procedure, it is not . . . law which requires any change of course from this [c]ourt."); *see also State v. Talbott*, 521 P.3d 948, 955 (Wash. 2022)(The part of *Martinez-Salazar* pertinent to this issue "is not based on any legal principle that applies to the states."); *Deviney v. State*, 322 So. 2d 563, 584 n.9 (Fla. 2021)(Lawson, J., concurring in part and concurring in the result)("*Martinez-Salazar* may have left open the issue of whether, under federal law, 'normal principles of waiver . . . disable a defendant from objecting on appeal to the seating of a juror he was entirely able to prevent' through the use of a peremptory challenge." (quoting *Martinez-Salazar*, 528 U.S. at 318 (Scalia, J., concurring in the judgment)); *State v. Lindell*, 2001 WI 108, ¶ 91 ("The *Martinez-*

35

*Salazar* opinion applies only to federal cases. It is not binding upon state courts."). In other words, it does not set out a constitutional rule controlling state courts.

¶ 58 There is a potential Colorado counterpart to *Martinez-Salazar*. Shortly before *Martinez-Salazar* came out, a division of this court decided *People v. Morrison*, 985 P.2d 1 (Colo. App. 1999), *aff'd*, 19 P.3d 668 (Colo. 2000). The division concluded: "[B]ecause [the] defendant chose not to excuse the juror in question by use of a peremptory challenge, the court's denial of his challenge for cause did not have the effect of reducing the number of peremptory challenges that he could exercise." *Id.* at 3. As a result, the defendant "failed to demonstrate how the court's denial of his challenge worked any prejudice upon him." *Id.*

¶ 59 About five months after *Martinez-Salazar* was decided, our supreme court affirmed the division's decision in *Morrison v. People*, 19 P.3d 668, 670 (Colo. 2000), albeit on different grounds. The supreme court's opinion unspooled like this:

  (1) "We hold that the trial court did not abuse its discretion in denying the defendant's challenge for cause because

the juror in question stated that she could fairly hear the evidence." *Id.*

(2) "Because the trial court did not commit any error concerning this juror, we *need not* base our decision on how the defendant responded to what he perceived to be an erroneous denial of a challenge for cause." *Id.* (emphasis added).

(3) "We consequently find it *unnecessary* to determine whether a defendant suffers an impairment of his right to use peremptory challenges if he exhausts his peremptory challenges but does not use one of his challenges against a juror who he originally challenged for cause." *Id.* (emphasis added).

(4) "In such a scenario, the controlling question is whether the defendant's constitutional right to an impartial jury was violated by the presence of a biased juror on his jury." *Id.*

(5) As a result, the division's rationale "incorrectly" relied on our supreme court's precedent because those decisions "do not require a defendant to cure a trial judge's error

37

on a challenge for cause by using a peremptory strike against the objectionable juror in order to preserve a claim that his right to a fair trial was violated by the presence of a biased juror on his jury." *Id.*

(6) Citing *Martinez-Salazar*, the court wrote that, "[r]egardless of whether the defendant chose to use a peremptory challenge on the allegedly objectionable juror, because he challenged [the juror] for cause and she served on the jury, his right to an impartial jury was violated if his challenge for cause was improperly denied." *Morrison,* 19 P.3d at 671.

(7) The opinion proceeded to discuss whether the record showed the trial court had erred when it denied the defendant's challenge for cause, ultimately concluding the trial court had not erred. *Id.* at 671-72.

¶ 60 Fast-forward nineteen years to *Abu-Nantambu-El,* ¶ 2, in which the trial court erroneously denied a challenge for cause based on section 16-10-103(1)(k), C.R.S. 2025. The majority described the issue in that case to be as follows: "What standard of reversal applies where a trial court erroneously denies a challenge for cause,

the defendant exhausts his peremptory challenges, and the challenged juror ultimately serves on the jury?" *Abu-Nantambu-El,* ¶ 1. The majority answered the question this way: "[W]e conclude that the erroneous seating of an impliedly biased juror is . . . structural error and requires reversal." *Id.* at ¶ 2. As a result, "such an error is not amenable to analysis under a harmless error standard, regardless of the juror's actual bias." *Id.* The majority did not address the issue whether the waiver doctrine applied in those circumstances because the prosecution had not raised the issue. *Id.* at ¶ 38 n.7.

¶ 61 Justice Samour dissented. "After arguing that [the juror] was biased and should not be allowed to serve," Justice Samour wrote, the defendant "turned around and elected not to excuse her with one of his twelve peremptory challenges." *Id.* at ¶ 44 (Samour, J., dissenting). As a result, Justice Samour thought the defendant had either waived or invited the error.

¶ 62 But, Justice Samour asked, Would one unfair shortcoming of his approach be "defendants . . . always los[ing]"? *Id.* at ¶ 53. He had this covered, encouraging trial court judges "to grant a defendant's request for an additional peremptory challenge [under

Crim. P. 24(d)(3)] whenever they deny a colorable challenge for cause — i.e., one that is difficult to resolve and presents a close call." *Id.* at ¶ 54.

### D.   Analysis

¶ 63    I conclude, for the following reasons, defendant waived the error the trial court made when it denied her challenge for cause to Juror M.B.  She waived the error because she did not remove Juror M.B. with a peremptory challenge, although she had sixteen available to use for that purpose.

### 1.   The Issue Is Preserved

¶ 64    Unlike in *Abu-Nantambu-El*, ¶ 38 n.7, the prosecution raised the issue of waiver in the answer brief in this appeal.

### 2.   The Issue Has Not Been Decided in Colorado

¶ 65    *Martinez-Salazar* only applies to federal cases.  *See Browning*, ¶ 9; *Talbott*, 521 P.3d at 955; *Deviney*, 322 So. 2d at 584 n.9 (Lawson, J., concurring in part and concurring in the result); *Lindell*, ¶ 91.

¶ 66    *Morrison* did not resolve the issue, either.

- The supreme court stated it "*need not base*" its decision "on how the defendant responded to what he perceived to

be an erroneous denial of a challenge for cause." *Morrison*, 19 P.3d at 670 (emphasis added).

- The court also said it is "*unnecessary* to determine whether a defendant suffers an impairment of his right to use peremptory challenges if he exhausts his peremptory challenges but does not use one of his challenges against a juror who he originally challenged for cause." *Id.* (emphasis added).

- Our supreme court resolved the appeal by concluding the trial court had not erred when it denied the defendant's challenge for cause.

- Harkening back to Justice Scalia's concurring opinion in *Martinez-Salazar, Morrison*'s discussion of not requiring a defendant to cure a judge's error on a challenge for cause by using a peremptory challenge was dicta. *See Abu-Nantambu-El*, ¶ 45 n.1 (Samour, J., dissenting).

- *Morrison* was decided fourteen years before *Novotny*, so, as an artifact of the era of the automatic reversal rule, it is unclear how much of *Morrison*'s reasoning is still viable since it was rooted in that now-discarded rule.

41

¶ 67    And, in *Abu-Nantambu-El*, ¶ 38 n.7, our supreme court stated that this issue has not yet been decided.  *See People v. Vergari*, 2022 COA 95, ¶ 9.

¶ 68    (I am aware the division in *People v. Garcia*, stated *Morrison*'s *holding* was, in part, that its previous decisions "do not require a defendant to cure a trial judge's error on a challenge for cause by using a peremptory strike against the objectionable juror in order to preserve a claim that his right to a fair trial was violated by the presence of a biased juror on his jury."  2018 COA 180, ¶ 10 (quoting *Morrison*, 19 P.3d at 670).  Relying on this "holding," the division rejected the prosecution's invited-error contention.  *See id.* at ¶ 8.  But I think the division put more weight on the quoted language in *Morrison* than the language bears, because it was dicta.  *See Abu-Nantambu-El*, ¶ 45 n.1 (Samour, J., dissenting).  In any event, I am not bound to follow the *Morrison* division's reasoning.  *See People v. Smoots*, 2013 COA 152, ¶ 21 (one division of the court of appeals is not bound by the decision of another division), *aff'd sub nom., Reyna-Abarca v. People*, 2017 CO 15.

### 3. Requiring Parties to Use Peremptory Challenges to Cure Jury Selection Errors Is a Good Idea Whose Time Has Come in Colorado

¶ 69    It is a general rule that "[a]ll matters pertaining to the qualifications and competency of the prospective jurors shall be deemed waived by the parties if not raised prior to the swearing in of the jury to try the case."  Crim. P. 24(b)(2).  So, if a defense attorney waives any error related to a challenge for cause by not making the challenge in the first place or if the attorney waives the same type of error by not exhausting the peremptory challenges allotted to the defendant, *see Vergari*, ¶ 13, then, How does "that same lawyer preserve[] the error by making the challenge for cause, having it erroneously denied, and then failing to remove the juror with an available peremptory challenge"?  William T. Pizzi & Morris B. Hoffman, *Jury Selection Errors on Appeal*, 38 Am. Crim. L. Rev. 1391, 1435 (2001).

¶ 70    Why should two of these acts (not making a cause challenge at all or not exhausting all available peremptory challenges) be subject to the waiver doctrine, while the third (not using a peremptory challenge to cure an erroneous ruling on a challenge for cause) not be subject to the doctrine?  In the third situation, "the lawyer had

the power to remove the biased juror, elected not to do so, and now wants to complain about that election on appeal." *Id.* This is especially true because, when looking at the relationship between challenges for cause and peremptory challenges, the history of these two types of challenges indicates "peremptory challenges have always had a curative purpose." *Id.* at 1393.

¶ 71 There are significant institutional costs to rejecting the application of the waiver doctrine in cases such as this one.

> The salutary purposes of the contemporaneous objection rule are particularly important in jury selection. We want to encourage the trial court's opportunities to correct jury selection error for the very reason that we are at the beginning of the whole process. There are obvious and enormous judicial economies in correcting jury selection errors when they are made, rather than with an appeal and re-trial.

*Id.* at 1435.

¶ 72 "By electing not to remove biased jurors peremptorily, defendants participate in their seating every bit as much as the trial judges who erroneously fail to remove them for cause." *Id.* at 1437. Correcting the trial judge's error is not hard. "The defendant is in a position to correct the trial judge's cause error early and easily, simply by using an available peremptory challenge to strike the

44

problem juror." *Id.* at 1436. And this remedy is "far superior, by any legitimate institutional measure, to letting the biased juror sit through an entire trial and then reversing the conviction and ordering a new trial." *Id.*

¶ 73 "*Martinez-Salazar* did not suggest that states are prohibited, or even discouraged, from requiring parties to cure alleged jury selection errors with their peremptory challenges." *Talbott*, 521 P.3d at 956. Indeed, "there are good reasons to require parties to use their available peremptory challenges to cure jury-selection errors. Doing so promotes a defendant's right to receive a fair trial in the first instance and prevents unnecessary retrials." *Id.*

4. Encouraging Trial Courts to be Open to Granting Additional Peremptory Challenges When the Decision to Deny a Challenge for Cause Is a Close One Would Cure Any Unfairness Created by the Application of the Waiver Doctrine

¶ 74 Crim. P. 24(d)(3) states: "For good cause shown, the court at any time may add peremptory challenges to either or both sides." I agree with Justice Samour's suggestion in his dissent in *Abu-Nantambu-El*, ¶ 54 (Samour, J., dissenting), that we should "encourage . . . trial court judges to grant a defendant's request for an additional peremptory challenge whenever they deny a colorable

challenge for cause — i.e., one that is difficult to resolve and presents a close call." The defendant could then use the extra peremptory challenge to remove that juror.

¶ 75 That remedy would (1) classify the denial of a challenge for cause "that is difficult to resolve and presents a close call," *id.*, as good cause for granting an additional peremptory challenge under Crim. P. 24(d)(3); (2) eliminate reversible error if the defendant used the extra peremptory challenge to remove the juror she previously challenged for cause, even if the court erred when it denied the challenge, because a biased juror would not have served on the defendant's jury; (3) mean that the defendant would waive her ability to challenge the trial court's ruling on the challenge for cause on appeal if she did not use the extra peremptory challenge to remove the juror previously challenged for cause; (4) require the appellate court to reverse the defendant's conviction if the defendant asked for an additional peremptory challenge, the trial court denied the request, the juror who had been unsuccessfully challenged for cause served on the jury, and the appellate court concludes the court erred when it denied the challenge for cause; (5) "disincentiviz[e] the prosecution from opposing colorable

challenges for cause," *Abu-Nantambu-El*, ¶ 55 (Samour, J.,

dissenting); and (6) "give trial court judges some comfort in knowing

that the additional peremptory challenge could cure the erroneous

denial" of colorable challenges for cause. *Id.*

5. Even if Defendants Should Not Be Required to Use Peremptory Challenges to Cure Jury Selection Errors, Defendant Nonetheless Waived Her Right to Challenge the Trial Court's Decision to Deny Her Challenge for Cause to Juror M.B.

¶ 76 It is my view that this case represents Justice Scalia's

"extreme example," *Martinez-Salazar*, 528 U.S. at 318-19 (Scalia, J.,

concurring in the judgment), which I believe is not as unusual as

Justice Scalia thought.

¶ 77 Defendant knew she had challenged Juror M.B. for cause, and

why. She used all sixteen of her peremptory challenges, including

seven of them to remove other jurors whom she had challenged for

cause. Yet, although she was obviously aware she could use any

one of her sixteen peremptory challenges to remove Juror M.B. from

the jury panel, she chose not to do so. She therefore knew Juror

M.B. would remain on the jury panel. And she did not ask the trial

court for an additional peremptory challenge under Crim. P. 24(d)(3)

for the express purpose of removing Juror M.B.

¶ 78    I conclude this combination of awareness and deliberate conduct was intentional, and it was an implied waiver of defendant's right to challenge the trial court's erroneous decision to deny her challenge for cause to Juror M.B. on appeal.  Defendant could have cured the trial court's error, but, through her counsel, she "engage[d] in conduct that manifest[ed] an intent to relinquish" her right to remove Juror M.B. from the jury, *Forgette*, ¶ 28, which amounted to a "conscious decision to forego" her right to challenge the trial court's error on appeal, *Cardman*, ¶ 18 n.6.  *See Martinez-Salazar*, 528 U.S. at 318-19 (Scalia, J., concurring in the judgment).

¶ 79    I now turn to the remaining appellate issue the majority does not address.

II.    Testimony About Manipulative Behavior

¶ 80    Defendant asserts the trial court erred by allowing the prosecution to rebut her insanity defense by introducing evidence showing she had previously been manipulative.  I disagree.

¶ 81    Defendant objected to this evidence, adding the court should analyze it under CRE 404(b).  The prosecution replied that the

evidence was relevant to defendant's mental condition. The court decided CRE 404(b) did not apply.

¶ 82 I will assume, for the purposes of discussion, the manipulation evidence was a form of "bad act" evidence. Yet I would nonetheless conclude the court did not err when it admitted it.

¶ 83 Before Colorado switched to its present unitary trial system, the law bifurcated sanity and guilt trials when defendants pled not guilty by reason of insanity. Generally, evidence of prior criminality of an accused is not admissible. However, in a bifurcated insanity trial, this rule is relaxed since the prejudice that may occur by the admission of such evidence is lessened by a separate trial on the issue of guilt. *People v. Bieber*, 835 P.2d 542, 546 (Colo. App. 1992) (citation omitted), *aff'd*, 856 P.2d 811 (Colo. 1993). Courts in other states have decided that defendants, by pleading not guilty by reason of insanity, make much of their entire life history relevant. *See State v. Hurles*, 914 P.2d 1291, 1297 (Ariz. 1996); *People v. Houser*, 48 Cal. Rptr. 300, 302-03 (Ct. App. 1965); *People v. Woody*, 157 N.W.2d 201, 203 (Mich. 1968); *People v. Santarelli*, 401 N.E.2d 199, 204 (N.Y. 1980).

¶ 84    I therefore conclude the evidence of defendant's manipulation would "throw light one way or the other" on the issue of defendant's sanity, *Hurles*, 914 P.2d at 1297 (citation omitted), and that "[i]t would strain the rules of evidence" to hold "that the [prosecution is] precluded from introducing evidence to counter a defendant's claim of insanity solely because the evidence involves the defendant's previous immoral or unlawful conduct," *Santarelli*, 401 N.E.2d at 203-04.

¶ 85    But, What if this reasoning does not apply to Colorado's present unitary trial system?  Even if I thought the trial court's decision not to apply CRE 404(b) was error, I do not think it is reversible error.  "A conviction will not be overturned on appeal when the trial court [used] an erroneous standard in analyzing the admissibility" of evidence if the evidence was "admissible, and the proper foundation [was] laid for its admission."  *People v. Cousins*, 181 P.3d 365, 370 (Colo. App. 2007).

¶ 86    The record supports a determination the manipulation evidence was admissible under CRE 404(b) and under the four-step test announced in *People v. Spoto*, 795 P.2d 1314, 1318 (Colo. 1990).  The evidence

- related to the material fact of whether the prosecution could prove beyond a reasonable doubt defendant was sane at the time of the crime;

- was logically relevant to this material fact because it provided a basis for testimony that some of defendant's conduct was manipulative, meaning she was malingering her claim of a mental disease or defect;

- had logical relevance independent of the prohibited inference that defendant committed the crime on account of her bad character because it gave the jury information with which to assess the validity of her insanity defense; and

- had probative value that was not substantially outweighed by the danger of unfair prejudice, *see* CRE 403, because defendant's manipulativeness did not have an "undue tendency to suggest a decision on an improper basis, commonly but not necessarily an emotional one, such as sympathy, hatred, contempt, retribution, or horror," *People v. James*, 117 P.3d 91, 93-94 (Colo. App.

2004)(quoting *Masters v. People*, 58 P.3d 979, 1001 (Colo. 2002)).

¶ 87    Accordingly, I would affirm defendant's convictions.